Good morning. My name is Ryan Norwood. I'm with the Federal Defender and I represent Willie Hartwell. Mr. Hartwell was deprived of his right to a direct appeal in this case because his attorney failed to consult with him about the appeal after his conviction. Now it's true that the duty to consult with a client about an appeal doesn't attach in every case, but it does attach in the vast majority of cases, and this is one of those cases. Here the evidence shows that both the lawyer and Mr. Hartwell agree on this, that there was a conversation shortly after the sentencing and judgment was entered in which Mr. Hartwell clearly told his lawyer that he was very dissatisfied with the outcome of the proceeding. That should have reasonably demonstrated to this attorney that Mr. Hartwell would have been interested in appealing the conviction. However, the attorney never spoke with Mr. Hartwell about his right to an appeal, never went over the advantages and disadvantages of filing an appeal, and as a result, no appeal was filed. So let's assume for the sake of argument that there was Strickland error. How is the – what does the record show or what's your argument about Strickland prejudice? The prejudice inquiry for this – for the denial of a right to appeal doesn't have anything to do with the underlying merits of the issues that might have been raised in the appeal. The issue is would Mr. Hartwell have filed the appeal if his attorney had consulted with him? And here the record shows fairly clearly that he would have. He was very dissatisfied at the time of the plea, which was eight years ago, and since then he's sought every other possible remedy he could seek to do something about it. He filed a state post-conviction petition. He appealed that petition. When it was sent back, there was an evidentiary hearing on it. He appealed the denial of the petition after that hearing, and he's now filed this Federal habeas corpus action. It's reasonably clear that if he had known about the right to appeal, he would have sought that remedy, too, in addition to all the other remedies he's sought to do something about this conviction that he's very dissatisfied with. Do you think as a practical matter at the end of the day that there's any remedy? Let's say he had relief. It just strikes me looking at this that probably it's a futile appeal in any event. Do you think to the contrary? And if so, why? I can't speak specifically about this. What I can say is that Mr. Hartwell was deprived of procedural right that he had. No, I understand that. I'm just – and if you're not prepared to or don't want to comment on it, that's fine. I'm just peeking behind the curtain a little bit, just asking you. I mean, to address one possible objection, it's true that he does have this one issue that was, in fact, decided on the merits by the Nevada Supreme Court. But that's not the only issue that he could have had resolved in a direct appeal. There was another issue, for example, that he wasn't able to raise in Federal court because it wasn't exhausted in State court, having to do with the notice that he received regarding this habitual criminal enhancement. And the thing is, if he filed a direct appeal, he wouldn't necessarily be related to the types of Federal issues that I might look for. He would be able to file – raise any kind of issue based on Federal or State law that an appointed attorney could find in the record and raise on his behalf. Just following up on Judge Thomas' question, I thought – and it was a little bit peculiar, but the Nevada Supreme Court, when it sent the case back the first time, said State court, district court, I guess is what they call them in Nevada, you should listen to all of the claims that appellant briefs and resolve them all in a final written order that can then be appealed. So basically, any issue or claim he wanted to bring was heard or could have been heard in that State court hearing and then appealed to the Nevada Supreme Court. And the Nevada Supreme Court then resolved them and basically found it against your client on all of his claims. Why doesn't that give your client everything that he wanted? What was missing there? Well, if you're referring to the Nevada Supreme Court's order, what they actually said was that they sent it back for a hearing on this right to appeal issue. They told the court to resolve that issue. And then if they found that he did have a right to appeal, then it could go on to resolve all of his claims and the merits. So the Nevada Supreme Court wasn't telling the district court to hear all of his claims in the petition, just the right to counsel one first. What happened in this case that is sort of strange is that the district court, even though it didn't have to under the order, did go ahead and resolve the merits of this one issue that was later appealed. But the next thing you can say is that the district court didn't have to. It says all of the claims raised in the appellant's petition. So all of the claims? You're saying there was only one? I'm just looking at my notes about that order. If the district court determines after an evidentiary hearing the trial counsel was not ineffective or failing to file a direct appeal, the district court shall resolve all of the claims raised in the appellant's petition in a final written order denying the petition. That's after the first state habeas. Yes. If the court found that the lawyer was ineffective in not filing the appeal, it would resolve the petition. Was not ineffective. Was not. Is that wrong? That's what I have in my notes. My reading of the order, and I don't have it in front of me, was that the only reason the court would need to go into the merits of these issues would be if there was a finding that the lawyer was ineffective in not filing the appeal. If I misread the order, I'll stand corrected. But it wouldn't seem to make sense to have the inquiry into the effectiveness first if you were going to go into the merits of the issues anyway. You seem to be referring to the point that the district court made in dismissing this petition, which is what he got was essentially the same thing as a direct appeal because of the way it was handled by the state courts. Right. There's still a difference here in that if he had had a lawyer appointed to represent him on a direct appeal as of right, the lawyer could have assisted him in drafting whatever claims he might have or the lawyer would have raised whatever claims he would have found to have merit in a brief. Here, the petition, the claims that have been raised throughout this case, these are the claims that Mr. Hartwell raised himself in his proper person petition. He never had a lawyer appointed to assist him with finding issues in his case in the first place. He did have a lawyer who was appointed later on in the process to help him with his evidentiary hearing and with his appeal from that hearing. But the right to a direct appeal means not just the right to have that appeal and to be able to raise issues, but to have a lawyer who can raise those issues for you. And that's what Mr. Hartwell never had here. How does, and I apologize for not raising this, it's not in the briefs, but it occurred to me in reading all of this, I was curious how your Anders equivalent plays out in Nevada. And as I understand it, you can correct me that under Ramos, which I think is the not equivalent to Anders, but it's the Nevada version of it, counsel has a duty to consult and then has to file a brief, right? Yes. So how does that play out here? He would have the right to file an appeal. So the appeal would be filed. He would speak with his, the attorney hopefully would consult with him, and then the attorney would, you know, file something. You know, I would, if the attorney was of the honest opinion that there was no issue at all that could be raised, he could file the equivalent of an Anders brief. But in this case, there are at least two issues that Mr. Hartwell did believe that he wanted to raise, and that if nothing else, he could raise this other issue, which was never resolved by the Nevada Supreme Court having to do with the level of notice. If it seems that the standard for ineffectiveness here is broad, it's because the remedy is very limited. I mean, Mr. Hartwell doesn't get necessarily a new trial out of this, or he doesn't get to have his conviction reversed. He just gets to have that direct appeal, which he never got to have and which he plainly would have filed if his attorney would have consulted with him about it. If I could address the other issue. Sure. The stipulation issue that was resolved in the merits by the Nevada Supreme Court. Nevada has two requirements for this habitual criminal statute. They're both things that the judge has, the sentencing judge has to do. First, the judge has to find that the person is an habitual criminal, that they have the requisite prior convictions. And second, even if the judge determines that the person is an habitual criminal, there has to be an independent decision made that it's just and proper for this person to be sentenced as an habitual criminal. In this case, the record shows that the sentencing judge didn't follow either one of these steps. Instead, what happened is Mr. Hartwell was found to be and sentenced as an habitual criminal based entirely upon this bare stipulation to habitual criminal status that he had made. And that procedure violated Nevada law. And as this Court had reasoned, Walker v. Deeds also violates Federal due process because this Nevada law governing the sentencing procedures creates a liberty interest for Mr. Hartwell. And the failure to follow these procedures deprives him of that liberty interest and thus deprives him of Federal due process. What do we make of the passage in the colloquy where the State lawyer goes through these are the six crimes of which he's been previously convicted, and the district court says something to the effect of, you know, do you have anything to say? And your client goes, yes, that's all true, or words to that effect. How does that relate to this stipulation to the convictions rather than to the status issue? That's the government's argument as I understand it. There's no specific colloquy on whether or not he has these actual convictions. That's what makes this case different from other Nevada cases in which the Nevada Supreme Court has said basically it's close enough. Like in Hodges v. State, which is the case that both of us cite throughout our briefs, the convictions are actually listed in the information, in the charging document the defendant pleads to. Here they're not listed there. They're not canvassed at the time of the plea. In other words, the judge doesn't go through all these particular convictions and ask if he has it or not. The first time they're all listed together is in this document that the prosecutor files after the plea has taken place. Even at the sentencing, there's a long proffer made by the prosecutor. And there's a different proffer made by his defense attorney. But at the very most, you might have a situation where Mr. Hartwell isn't specifically denying these convictions. But that's not the same thing as saying that he's stipulated to them. In fact, there's a lot of discussion in the record when his lawyer speaks for sentencing about exactly what these convictions may or may not mean. The point is that the judge never resolves any of this because she determines that he needs to be sentenced as an official offender based solely on this bare stipulation that he's entered. But is this a – what's the constitutional question? The constitutional issue is – the case on point would be Hicks v. Oklahoma, which is a United States Supreme Court case that deals with States making errors in finding sentences mandatory instead of discretionary. And in Walker v. Deeds, this Court applied Hicks v. Oklahoma to Nevada's habitual offender statutes and found that the failure of the State courts to follow these procedures violated – created a liberty interest which was violated. The difficulty, I think, with that argument now is we have Cook v. Swarthout and all that line of cases that kind of cuts against the notion that the liberty interest that's cognizable in federal habeas might apply in these situations. Do you think that has any bearing here, or is that new territory? I think the claim is still good as long as Hicks v. Oklahoma is still good. And that's never been overruled. It's – these due process questions can get complicated, and the Supreme Court's come up with different answers in different situations. But in this situation, dealing with mandatory versus discretionary sentences, in this habitual criminal context, there is a United States Supreme Court case that's directly on point that that's still good. We've got two minutes left. Do you want to reserve? I will. Thank you. May it please the Court. My name is Tom Gover. I'm with the Nevada Attorney General's Office. I'm representing the respondents in this case. Regarding the deprivation of an appeal issue, our position is that Hartwell got his remedy. As Judge Ikuda had – was referencing during questioning, this case was initially reversed and remanded to the district court for consideration as to whether or not he was deprived of an appeal. He was given an evidentiary hearing. There was a briefing that was done after the evidentiary hearing. He was appointed counsel, Michael Villani, who assisted him in the evidentiary hearing. And Judge Villani – or he's now Judge Villani down in the Regional Justice Center in Clark County. But Michael Villani, the counsel, did a brief and raised the issue regarding the improper stipulation with the Nevada Supreme Court. The Nevada Supreme Court's opinion in affirming the decision of the district court was, in viewing the facts of the sentencing, that Hartwell stipulated to five prior convictions. And that's what's key in this case. Our position is that the state court record supports that finding by the Nevada Supreme Court, and it certainly is not an objectively unreasonable finding by the Nevada Supreme Court. On February 11, 2004, Willie Hartwell presented himself for sentencing, not on one, but on two new felony cases involving burglary with the use of a deadly weapon. The colloquy that Judge Ikuda referenced to during the sentencing involved the state prosecutor briefly listing the six prior burglary – I think they were breaking and entering convictions from another jurisdiction – noted, actually, that there might have been a dispute as to one of those claims. So one out of the six was possibly disputed. But once Hartwell stood up to do his allocution, basically stated, I wish I could dispute anything that the state has said, that that's basically his record. And in his statement of allocution, was trying to convince the court that 25 years would be enough. You know, please send me only for 25 years. His counsel got up and argued for two concurrent 10 to 25-year sentences to resolve these two cases, basically mirroring the request of his defendant that, you know, 25 years would be enough. Hartwell basically got everything that he wanted from his argument. He had seven counts that he was looking at. He could have had every single one of those run 10 to 25 consecutive. What he was looking for was that 25-year sentence. He wanted one habitual criminal term of incarceration. He ended up getting two. That was the source of his disappointment. But, you know, our position is that the Nevada Supreme Court viewed his claim regarding his stipulated sentence. Now, there was also some questions during questioning as to, you know, the difference between maybe a stipulation to a status and stipulations to convictions. And the difference, it's not a semantic difference. The difference, you know, in Nevada, what is required for somebody to be a habitual criminal is three predicate offenses and a district court judge who understands that he has the discretion to dismiss a habitual criminal count. Okay. And so what we have in this particular case is obviously not someone who doesn't have the requisite amount of convictions. If he was stipulating, you could see in a situation where somebody was stipulating to a status as a habitual offender, they don't even have the requisite three felony convictions. The Nevada's habitual criminal law isn't about sending bad actors who have, you know, one felony and their second felony is really bad and so the prosecutor is trying to hold this guy over a barrel and have him stipulate to a habitual criminal sentence. You know, what is required is that you have at least the three. And obviously you have a court that understands its exercise of discretion. The Ninth Circuit, in my briefing, I did mention the Tilcott v. Budge case, which recognizes the Nevada statute 207.010, that the language of that basically says if you have the three predicate felony offenses, a person is a habitual criminal and shall be punished. That's the language in the statute. It's got that mandatory is-shall language. Now, also built into the statute is a recognition that the district court judge has the discretion to dismiss account of habitual criminality. And that's where, you know, we've had developing case law. I don't know if it's developing case law, but in Walker v. Deese, we get into the just and proper particularized findings type of language, which was based on a decision in the Nevada state courts wherein a district court judge thought that he was bound by the habitual criminal statute to sentence someone to a habitual sentence, merely because of the proffering of three felony convictions. And it's in that, I believe it's Clyde case, that the Nevada Supreme Court articulated for the courts that if you find that it is just and proper, you can dismiss that count. Since 1993, when that case came out, we had Hughes v. State, which specifically states that there's no requirement that the trial court determine if it is just and proper to impose a habitual criminal sentence. It's the other way around. You need to find that it's just and proper to dismiss the count. O'Neill v. State is another case that we cited. It's a 2007 opinion, so even, you know, more recent. We stress that the just and proper determination relates solely to the district court's statutorily granted discretion to dismiss a count of habitual criminality pursuant to NRS 207.010 sub 2. And so we don't have an improper stipulation in this particular case. That's clear from the Nevada Supreme Court's opinion. They view the entire record, including the plea agreement. There was a notice of habitual criminality that was filed. The predicate felony offenses were not put in the information, as pointed out by my colleague, but it was put in a notice of habitual criminality. And so prior to sentencing, they were on notice that there were seven particular felonies that they were looking at to predicate the habitual criminal sentence. At the sentencing hearing, the prosecutor actually referenced the six of them, and no one said boo on defense counsel's side. And so that is different than stipulating to a status as a habitual criminal. That silence, that waiver of any objection is what's talked about in Hodges, and that can form the basis of proof under Nevada law for that establishes the predicate of felony offenses. And so, you know, that, you know, I believe, like I said when we started, that Willie Hartwell got his remedy. He actually had a Nevada Supreme Court judge consider his stipulation claim, this improper stipulation claim. Now, there has been some reference to another claim, the notice claim. If I would have had an attorney, I could have done my notice claim. And actually, if you look at Michael Villani's fast-track statement where Mr. Hartwell had counsel and a brief was done to Nevada Supreme Court, in that language, he references the fact that the information was defective because it didn't have the, it didn't reference these predicate felony convictions. And our position on that is that Willie Hartwell completely had notice of the habitual criminality in this case, of the state's intent to seek a habitual sentence. He had so much notice of it that he was good for one habitual sentence. If he would have got what he wanted, which was being treated as a habitual criminal, but only one term of incarceration, that would have been fine. He would have had no disappointment. You know, his sole disappointment wasn't that he was treated as a habitual criminal. It's that he received two sentences of habitual criminality. So this claim has very little merit. In addition to that, the fact that he had actual notice and that he had notice that was filed prior to sentencing, it's a pre-plea defect. The fact that the information, that information existed at the time that you were going to enter your plea, knowing that, having been counseled by your attorney, canvassed by the court, you entered into this plea where you stipulated to be treated as a habitual criminal. He knew he was going to be going and being sentenced as a habitual criminal under 207.010. And so the fact that it's a pre-plea defect, the fact that he has actual knowledge, this notice, this, the only claim that they can come up, we were prejudiced because we could have brought this one claim. The only claim that they can come up with seven years after he was convicted in 2004 is a bogus claim. This notice claim means nothing. What did he get in exchange for his plea agreement? What did he have at risk, in other words? What he had at risk was Excuse me. What did he have at risk if he had not pled? He was looking at, I believe it was six counts on one case, three counts on the other. He had his bad criminal history. And so he could have been sentenced to life without the possibility of parole under the habitual criminal statute. And so his counsel actually worked out a pretty good deal for him. It would have been better if he would have got the 10 to 25. That's the best that he could have done. But, you know, there were six counts that he was looking at on the one case, and he ended up pleading the five of them. There was a kidnapping charge with the use of a deadly weapon that was kicked out. And on the other case, I believe there was three counts there. So he was looking at a substantial amount of time. If you look at the sentencing transcript, there was some conversation about, you know, 25 years. You know, he'd be in his 40s and an old man. And I'm reading that thinking, 40s and old man. But that was the argument, that, you know, if he could do 10 to 25, he would be out by the time, you know, he was in his 40s, and he would have slowed down. And so, and, you know, the job that his attorney did for him, you know, I think is reflected somewhat in his colloquy that Judge Ikuda had mentioned. You know, he actually kind of praises his attorney for all the work that he's done. And obviously, you know, there seemed like there was a good working relationship there. Even in the evidentiary hearing when we were discussing the issue of whether or not he, you know, whether or not the magic words by his counsel was, do you want an appeal? You know, it was clearly established that he never said that. But if you look at the evidentiary hearing, there's conversations of telephone conversations that went on afterwards where they discussed, well, maybe we can do a motion for a resentencing, or at the end of the day, you know, my counsel told me, you know, I might, my recourse might only be able to do an ineffective assist to the counsel claim, which I can't do in an appeal. I have to do that in a petition. And so, you know, if there is any failing on Mr. Grasso's part as being the counsel for this defendant, it isn't from a lack of communication. It seems like they had a good relationship from the words of Willie Hartwell himself and, you know, just from looking at the state court record that there was a lot that was done for him and actually a decent deal that was negotiated for him by his counsel. So unless there's any other questions, I'll see you the rest of my time. One question I had in leaving, I appreciate your discussion of the substance and your argument that he may have received what he asked for, but assuming hypothetically that nothing had happened in the Nevada courts after his initial plea, I'm puzzled by the Nevada Supreme Court's treatment of the failure to consult. In earlier cases, and I'm thinking of Ramos, and I know it's not in the brief, you're probably familiar with it, the Nevada Supreme Court says, if in counsel's estimation an appeal is without merit, counsel must discuss his or her conclusion with the client and advise the client against pursuing the appeal. If defendant insists on continuing with the appeal, counsel should file a brief that includes all arguable issues and argues the defendant's appeal as well as possible. So Ramos seems to require as a matter of state law that counsel has to consult and if the counsel thinks it's frivolous to advise them. Then in this case, the Nevada Supreme Court says the record doesn't indicate that Hartwell ever asked his counsel to file. This is Hartwell. It goes on and says, further counsel testified at the evidentiary hearing that he did not see any appealable issues in this case. But they never addressed the duty to consult. I'm just puzzled by that. Can you enlighten me on the Nevada law? And then, of course, the other issue is how does that fold into Strickland and federal law. But first, Nevada. And, Your Honor, you know, one case that we neglected both the appellants and the appelees to cite to the court was Thomas III v. State. It's a Nevada case from 1999. It's a Nevada 115, 115 Nevada 148. And it's an interesting case because it applies to this case and it deals with the question of extending the Lozada remedy to situations where somebody is convicted based on a guilty plea. It says, you know, and, of course, the State argued that it's not required in that case. And the Nevada Supreme Court's findings were we find the State's arguments persuasive. We hold that there is no constitutional requirement that counsel must always inform a defendant who pleads guilty of the right to pursue a direct appeal. We recognize that under certain circumstances, counsel will have an obligation to advise the defendant of the right to appeal. One such circumstance is when the defendant inquires about an appeal. We didn't have that here. Another circumstance is when the situation indicates that the defendant may benefit from receiving the advice such as the existence of a direct appeal claim that has a reasonable likelihood of success. We can tell from the evidentiary hearing that they couldn't come up with one and really. So I gather your argument is, because my question has taken you over your time, that Thomas and his progeny makes an exception in the case of guilty pleas to the general rule that you have to consult. The way they looked at it was Lozada wasn't extended to the situation where you have the guilty plea. Not so much it was an exception. Lozada came in Nevada Parliance. Lozada is our Andrews Consult issue. That came in 1994. In 1999, the Nevada Supreme Court looked at that and said, are we going to expand this to the guilty plea situation? And they refused it. And they said, to the extent that this Court's decision in Franklin v. State, which could be read to suggest that counsel has an absolute duty to advise a defendant who pleads guilty of the right to appeal, we expressly disapprove of it. So I'd, you know, refer Thomas, the Court, to Thomas III. All right. Any further questions? Thank you. Thank you. Rebuttal. Judge Thomas, the issue you raise about the Nevada Supreme Court's order demonstrates why this case is cognizable in habeas review. This isn't a situation where the State court is – there's a good faith disagreement about how a Federal standard should be applied. This is a situation where the State court's applying the wrong standard. Under Flores-Rotega, the duty to consultation is triggered in the vast majority of cases including situations where it's – where the client reasonably demonstrates that he might be interested in an appeal. He doesn't need to specifically say, I want to have an appeal. And there isn't necessarily any inquiry into the underlying merits of the issues that might be raised in the appeal. But the Nevada Supreme Court resolves the issue by saying, well, you didn't ask for an appeal and we don't think you had any good issues anyway. That's not the correct standard for resolving ineffective assistance in this context. Do we have to look – let's assume we take the argument that he did not fulfill his duty to consult and it was enough that the client expressed dissatisfaction. One would think if a client is unhappy, the normal reaction of a lawyer would be, well, you know, we can always try something on appeal to answer even that expression. But so I'm less troubled about finding for you on that ground. But I have real troubles with the suggestion that, A, he did get a hearing ultimately on the major issue, which is the repute offender, the enhancement. And I'm still trying to find what other non-frivolous – do we not look to the merits of any potential claims that he would now dig up? And what is the other – what non-frivolous claim is out there that he would have, come hell or high water, decided to appeal and put at risk his plea agreement? Let me answer the second part of your question first. The short answer is no, that there is no inquiry into the underlying merits of the claims. The way we figure out what would have happened on a direct appeal under Flores-Ortega is to allow the defendant to have that direct appeal. The longer answer is that there is another issue that's raised that was raised in the State proceedings but not in the Federal proceedings regarding the notice. The State disagrees with the merits of that issue. But again, the way But that's it. That's the other argument. That's the argument that if one looked at the merits, that's what you're citing. That's the only other issue I can point to right now. If another lawyer were appointed to represent Mr. Hartwell on direct appeal, he may find some other issues. But that's correct. That's the only one that I'm able to point out for you right now. Thank you. Well, assuming for the sake of looking at the Flores-Ortega standard and accepting your argument there was not any meaningful consultation, if the State then provides a different remedy, where are we? I know your position is that the remedy afforded by the Nevada Supreme Court was not effective. But let's assume that your opponent's construction is correct. Doesn't that defeat – wouldn't that defeat strickling prejudice? It would only be sufficient if it were the same remedy. The remedy that he was entitled to was a direct appeal where he was appointed by counsel, where he had appointed counsel who could raise issues on his behalf. And he didn't have those things. At most, he was entitled – he was allowed to raise on post-conviction one of the issues that might have been raised on direct appeal. But that's not the same thing as letting him raise all of his issues, and it's not the same thing as giving him a lawyer who could advise him, in the first instance, as to what issues he might want to raise and not want to raise. Let's assume hypothetically the Nevada Supreme Court had said, you can raise anything you want to. We're reopening this. You get an evidentiary hearing. It's wide open. And then we'll hear the issues on appeal. Why wouldn't that cure any error? If they appointed him a lawyer in the first instance who could have consulted with him about any issues that he wanted to raise, if they gave him a hearing on all of those issues, and if they decided everything on the merits, then sure, that might be close enough. But that's not what happened here. Roberts. Okay. Well, thank you both for your arguments, and I appreciate the clarifications. Very helpful. The case is here to be submitted for decision, and we will be in recess for the morning. Thank you.
judges: Thomas, Fisher, Ikuta